UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

---

JOHN CANNING
    Plaintiff,

v.                                         CIVIL ACTION NO.
                                            1:22-cv-339-TWT

SHIRLEY JACKSON, et. al.,
    Defendants.

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Supervisory Defendants Bobbitt, Wicker, Edwards, Ward, Holt, Toole, Shepard, and Sauls, pursuant to Fed. R. Civ. P. 8, 10, and 12(b)(6), moved to dismiss Mr. John Canning's complaint, arguing that the complaint is improper, that the complaint fails to state a claim upon which relief can be granted, and that Defendants are entitled to qualified immunity. ECF Dkt. No. 14. For the reasons stated herein, Defendants' motion to dismiss should be denied.

## BACKGROUND

Mr. Canning timely filed the underlying complaint alleging that these particular Defendants are liable for damages he suffered as a result of being violently stabbed in the face by another inmate upon rejecting sexual violence by that inmate, causing a severed artery, being denied appropriate medical care for his resulting injury, and being denied medical care as he nearly bled to death

1

when he was abandoned in a solitary confinement cell instead of being rendered prompt emergency treatment. Mr. Canning suffered serious blood loss and physical and psychological injuries as a result of this ordeal.

The supervisory defendants who move to dismiss are sued in their supervisory capacity for deliberate indifference toward a serious medical need (Counts II and III) and for deliberate indifference toward a substantial risk of harm (Count IV), where they were aware of numerous attacks and killings of the nature that Mr. Canning suffered (Compl. At ¶ 62-65), that inmates had access to weapons (Id. at ¶ 66-75), knew that inmates were not being properly restricted in their movement (Id. at ¶ 76-81), that the prison was chronically understaffed (Id. at ¶ 82-87), that medical staff were ignoring serious medical needs generally (Id. at ¶ 88-89) and that they were ignoring the serious medical needs of individuals left in segregation or solitary confinement (Id. at ¶ 90-97). Mr. Canning substantiates this record by citing to prior litigation, media, reports, audits, a pending Department of Justice investigation, and research from advocacy organizations, and expects to further establish the facts of Defendants' awareness through discovery. Id. at ¶ 59-61.

**A) Plaintiff's Complaint is Properly Pled.**

Defendants argue that the complaint contains multiple types of "shotgun pleading" citing Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321-1323 (11th Cir. 2015). ECF Dkt. 14 at 2. In fact, 11th Circuit law

generally and the holding in Weiland specifically – a case in which the complaint was reinstated despite allegedly containing shotgun pleading in violation of Rules 8 and 10 – are contrary to Defendants' position.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another...to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, supra at 1323. Dismissal under Fed. R. Civ. P. 8(a)(2) and 10(b) is "appropriate where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Weiland, supra at 1325 (citing Anderson v. District Bd. Of Trustees of Cent. Fl. Comm. College, 77 F.3d 364, 366 (11th Cir. 1996) (emphasis in original). A defendant's lack of request for a more definite statement under Fed. R. Civ. P. 12(e) and the lack of any indication from Defendants of difficulty understanding the allegations against them both weigh against dismissal for shotgun pleading. See, e.g. Weiland, supra at 1324 ("This is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count. This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it"). Furthermore, "failure to specify a particular defendant is not

3

fatal...when '[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'...While defendants may disagree that such allegations are accurate, that dispute is for another day." S.Y. v. Holiday Hosp. Franchising, LLC, No. 2:20-cv-624-JES-MRM, 2021 U.S. Dist. LEXIS 85011, at 5 (M.D. Fla. 2021) (citing Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000)).

      In this case, Mr. Canning's complaint properly states which supervisory defendants are sued for which counts, and provides straightforward bases on which each claim is grounds for the relief sought. Specifically, Defendants Bobbitt, Edwards, Ward, and Sauls (Defendants 3, 5, 6, and 10 in the complaint) are sued in their supervisory capacities where they were aware of the substantial risk posed by Defendant Olowsky and for violating their duties to prevent Defendant Olowsky from denying Mr. Canning emergency healthcare in Count II. Compl. at ¶ 105-106. Defendants Bobbitt, Wicker, Ward, Holt, Toole, and Shepard (Defendants 3, 4, 6, 7, 8, and 9 in the complaint) are sued in their supervisory capacities where they were aware of the substantial risk that Defendant Jackson posed to prisoners at Georgia State Prison and for violating their duty to take reasonable steps to prevent Defendant Jackson from leaving Mr. Canning to die in solitary confinement. Id. at ¶ 109-111. The same supervisory Defendants are further sued for their awareness of the general lack

4

of safety in the prison and for violating their duty to take reasonable steps to address them in Count IV. Id. at ¶ 114-115.

The alleged basis for supervisory authority is spelled out clearly, per defendant, at Compl. ¶ 5-14. Defendant Olowsky's misconduct is spelled out explicitly in Factual Allegations – Section B (Id. at ¶ 28-38). Defendant Jackson's misconduct is described in detail in Factual Allegations – Section C (Id. at ¶ 39-46). The Defendants' more general disregard for the lack of safety and medical care in Georgia State Prison is indicated in Factual Allegations – Section E, and in turn divided by subsections describing Attacks and Killings (Id. at ¶ 62-65); Access to Weapons (Id. at ¶ 66-75); Insufficient Movement Restrictions (Id. at ¶ 76-81); Understaffing (Id. at ¶ 82-87); Indifference to Medical Needs Generally (Id. at ¶ 88-89); and Indifference to Medical Needs in Segregation or Solitary Confinement (Id. at ¶ 90-97).

Defendants' assertion that the complaint is improperly pled where several paragraphs refer to the Defendants' awareness or responsibility collectively is misplaced, where these paragraphs can be fairly interpreted to apply to all Defendants. Indeed, that paragraphs cited by Defendants (ECF Dkt. 14 citing Compl. ¶¶ 60, 62, 66, 67, 80, 82, 88, 90) all refer to matters that are alleged to be generalized and obvious and therefore that all Defendants were aware of the allegations therein.

In sum, Defendants' argument that the complaint is insufficient per Fed. R. Civ. P. 8 or 10 must be rejected.

**B) Plaintiff Properly States Claims Upon Which Relief Can Be Asserted.**

Defendants assert that Mr. Canning's complaint fails to state a claim for supervisory liability where the allegations in question are "too conclusory to state a claim" and "[t]he actual facts asserted in the complaint do not amount to widespread abuse." ECF Dkt. 14 at 4-5. Defendants further assert that the complaint is insufficient to establish a valid claim for a history of widespread abuse where the timeline of alleged incidents and omissions and related prior litigation are mostly subsequent to Mr. Canning's attack and could not have put Defendants on notice; where none of the alleged incidents or omissions are specific to the weapon used against Mr. Canning; where prior litigation was mostly not directed at the specific Defendants themselves; and where prior litigation and/or complaints lodged were not necessarily resolved in complainants' failure. ECF Dkt. 14 at 3-7. But Defendants' assertions are selective with regard to the facts alleged in the complaint and, in any case, is incorrect as to the legal standard for surviving a 12(b) motion.

At this stage in the litigation, Mr. Canning need only assert "a short and plain statement" of the claims for which he seeks relief, and that this plain statement be "facially plausible" and "give the defendant fair notice of what the...claim is and grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89,

93 (2007). Such a complaint should not be dismissed where there is enough factual detail to support "a reasonable expectation that discovery could supply additional proof of...liability." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012).

To state a claim for supervisory liability over a subordinate's constitutional deprivation, a complainant must assert a causal connection between the supervisory official's actions and the alleged deprivation. See Wilson v. Attaway, 75 F.2d 1227, 1241 (11th Cir. 1985). Among the ways to establish such a causal connection is where "a history of widespread abuse puts the official on notice". Id. See also Fundiller v. Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985). A complainant can show awareness of such widespread abuse by citing "force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation" regarding the abuses. Danley v. Allen, 540 F.3d 1298, 1305 (11th Cir. 2008). Supervisory officials' subjective awareness of a "generalized, substantial risk of serious harm," without regard to specific risks of constitutional violations, such as knowing "precisely who would attack whom" is enough to establish that supervisors are on notice of the need for remedial action. Hale v. Tallapoosa Cty., 50 F.3d 1579, 1583 (11th Cir. 1995).

Mr. Canning's complaint properly states claims for supervisory liability. It cites "[t]he widespread presence of knives and other weapons inside Georgia

State Prison, lack of functioning security measures, insufficient staff to prevent violent attacks using these weapons, disregard of serious medical issues, understaffing of solitary confinement cells, and abandonment of individuals 10 with serious conditions to the point of death in solitary confinement" as indicators of a widespread history of abuse, and cites "prior litigation, media reports, audits carried out by various state entities of Georgia State Prison, an investigation by the federal Department of Justice, and research reports from advocacy organizations" as grounds to establish notice in conjunction with "documents not currently available to Plaintiff but held by Defendants, including but not limited to inmate grievances, situation reports, institutional offender files, and informal reports from officers" through the discovery process. Compl. at ¶59-61; see also Background, infra highlighting and expanding on each of these allegations and sources.

Contrary to Defendants' allegations, these allegations at minimum establish the plausibility of widespread abuse. Where Defendants assert that these incidents are insufficient in number where "only" five people were murdered and only a handful of medical indifference cases were cited, Plaintiff assert both that these incidents, in their totality, constitute a widespread problem alone, but are at least enough to plausibly assert the existence of more such incidents. This is sufficient under Chaparro, Id.

Contrary to Defendants' insinuation that these allegations are insufficient where they are based on indicators of abuse that began after Mr. Canning's attack, many of the allegations address problems that had been ongoing for years. The complaint alleges widespread access to weapons as early as 2014 (Compl. At ¶ 69); documented and chronic failure to log tool use as early as 2018 (Id. At ¶ 70-72), the lack of contraband controls as early as 2019 (Id. At ¶73), lack of movement controls documented in an audit in 2019 (Id. At ¶ 78), litigation regarding lack of movement controls as early as 2015 (Id. At ¶ 80), NGO documentation of a lack of functioning cell door locks as early as 2014 (Id. At ¶ 81), reports of understaffing as early as 2019 (Id. At ¶ 84), lawsuits from as far back as 2016 regarding medical disregard (Id. At ¶ 89), and reports of lack of proper supervision of solitary confinement units as early as 2018 (Id. At ¶ 91). While some of the incidents or indicators of misconduct discussed took place after Mr. Canning's assault, such as the spate of murders, the complaint properly alleges numerous signs of prior disregard for inmate safety and medical needs and a greater factual record may establish that these patterns of misconduct, including non-fatal attacks, that stretch back to before Mr. Canning's assault.

Furthermore, where the complaint is premised on allegations of generalized risks based on the kinds of documents cited in Danley, and with intent to further substantiate these claims through discovery with more such

9

documentation, Defendants' remaining bases to challenge sufficiency collapse. Where Mr. Canning asserted bases that indicate, at minimum, the plausible widespread presence of weapons and the disregard of contraband controls, no allegation of where Psycho's knife came from – without conceding Defendants' implication that it could not have been fashioned from unsupervised tools – is necessary. And contrary to Defendants' argument, where Mr. Canning has cited the kinds of documents referenced in <u>Danley</u> and similar litigation, there is no need that any cited litigation be successful; where the litigation asserts the plausibility of widespread abuse in the form of generalized risks, the underlying alleged abuses are enough to establish notice regardless of which officials were sued.

**C) Defendants Are Not Entitled to Qualified Immunity.**

A complaint is generally sufficient if permits a "reasonable inference" that a defendant violated clearly established rights. <u>See</u> Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); <u>see also</u> <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 396 (4th Cir. 2014) ("A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but...when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'").

Defendants' argument that they are entitled to qualified immunity is premised on the notion that no constitutional violation has been properly alleged

10

at all, let alone one which is "clearly established". But as discussed in Section B, <u>supra</u>, Mr. Canning at minimum plausibly asserts that Defendants violated his rights in their supervisory capacities by disregarding constitutional violations of their subordinates. Defendants do not address whether or not the supervised defendants – unrepresented here – violated their constitutional duties. Nonetheless, it is well established that these subordinates had a constitutional duty not to be deliberately indifferent to serious threats to Mr. Canning's safety or to his serious medical needs. <u>See</u> Farmer v. Brennan, 511 U.S. 825 (1994). Where Mr. Canning has properly asserted supervisory claims against Defendants under clearly established law, Defendants' qualified immunity defense necessarily fails.

## CONCLUSION

Defendants' Motion to Dismiss should be denied.

Respectfully submitted this 6th Day of May, 2022.

<u>/s/ Amith Gupta</u>
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
(408) 355-5782
amithrgupta@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing RESPONSE TO DEFENDANTS' MOTION TO DISMISS to the Clerk of Court and all counsel of record via the ECF system.

Counsel of record is:

Laura Lones
Senior Assistant Attorney General
Office of the Attorney General Chris Carr
General Litigation
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3488
llones@law.ga.gov

This 6th day of May, 2022.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
(408) 355-5782
amithrgupta+law@gmail.com