IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| JOHN CANNING, | * |
| Plaintiff, | * |
| v. | *   CV 622-038 |
| SHIRLEY JACKSON, et al., | * |
| Defendants. | * |

# O R D E R

Plaintiff John Canning brings this civil rights action under 42 U.S.C. § 1983 against ten Defendants, all personnel at Georgia State Prison ("GSP") and within the Georgia Department of Corrections ("GDOC"), for injuries he suffered while incarcerated. (Am. Compl., Doc. 37, at 1.) Defendants Bobbitt, Wicker, Edwards, Ward, Holt, Toole, Shepard, and Sauls (collectively, the "Moving Defendants") move to dismiss Plaintiff's Amended Complaint. (Doc. 41.) For the following reasons, the Moving Defendants' motion is **GRANTED**.

## I. BACKGROUND

On or around January 27, 2020, Plaintiff was an inmate at GSP, an all-male prison. (Am. Compl., at 4.) That afternoon, another inmate, known to Plaintiff as "Psycho," sought to enter Plaintiff's cell. (Id.) Psycho said Plaintiff's cell provided a

better vantage point for him to watch the female nurses, and he wanted to enter the cell and masturbate. (Id. at 5.) Plaintiff alleges that openly masturbating in front of another person without consent is an act of sexual violence. (Id.) Plaintiff attempted to refuse Psycho's entry into his cell. (Id.) However, Psycho entered the cell anyways, and after he entered, Plaintiff physically restrained Psycho and forced him out of the cell. (Id.) Psycho and an unknown inmate then together forced their way back into Plaintiff's cell, and Psycho had a knife that he swung and used to stab Plaintiff in the face. (Id.) Another inmate, known to Plaintiff as "Roun," intervened with his own make-shift weapon, knocked out Psycho, and whisked Plaintiff to safety. (Id.)

The knife stab caused Plaintiff to bleed profusely from his mouth and nose, and he began gagging due to the sheer volume of blood. (Id.) A corrections officer noticed Plaintiff's injury and took him to the medical ward where Defendant Dr. Marcus Occhipinti attended to him. (Id. at 6.) Plaintiff told Defendant Occhipinti he was stabbed in the face with a knife, however Defendant Occhipinti believed it was a superficial wound. (Id.) Plaintiff began vomiting blood and continued bleeding so much he filled a bucket with blood. (Id.) Defendant Occhipinti ordered x-rays and then released Plaintiff from the medical ward. (Id.) After leaving the medical ward, Plaintiff encountered Defendant Sergeant Carol Eason-Jackson and pled for emergency help. (Id.)

2

Defendant Eason-Jackson put Plaintiff in a urine-covered cell in solitary confinement. (Id.) While in solitary confinement, he continued to lose blood and eventually passed out. (Id. at 7.)

A prison orderly walked by Plaintiff's cell and noticed his motionless body and immediately called paramedics at the Reidsville Fire Department. (Id.) Upon arriving at the prison, the paramedics were "aghast" at Plaintiff's condition and airlifted him to Savannah General Hospital. (Id.) During the air lift, Plaintiff filled another bucket with blood. (Id.) Once at the hospital, Plaintiff was operated on for twelve hours – he had a severed artery and multiple broken bones. (Id.) The doctors concluded Plaintiff likely would have died from blood loss if not for the paramedics' intervention. (Id.) Plaintiff believed he was going to die when in solitary confinement, and he alleges those beliefs were accurate based on the injuries he suffered. (Id.)

The above-described close encounter with death caused Plaintiff severe psychological issues, and he was diagnosed with Post Traumatic Stress Disorder ("PTSD") by his counselor at GSP and prescribed medication. (Id.) He alleges that he continues to suffer emotional trauma from being attacked, stabbed, and believing he would bleed to death as well as due to the attempted sexual assault on his person. (Id. at 7-8.) Further, he alleges he continues to suffer physical pain from his broken bones and stab wound. (Id. at 8.)

3

Plaintiff's Amended Complaint asserts Defendants exhibit a pattern of disregarding inmate health and safety. (Id.) Specifically, he alleges the widespread presence of knives and weapons at GSP, lack of functioning security measures, insufficient staff, disregard for medical issues, understaffing of solitary confinement cells, and abandonment of prisoners with serious conditions are not isolated to his case. (Id.) Several of the Defendants moving to dismiss were not involved in the immediate events of Plaintiff's injuries, and the Court will review their job descriptions below. All Defendants are sued in their individual capacities.

Defendant Bobbitt is or was the Warden of GSP at the relevant times and is responsible for overseeing all inmates and staff. (Id. at 2.) Defendant Wicker is or was Deputy Warden of Security at GSP and has supervisory authority over all security staff therein. (Id.) He is or was responsible for overseeing the security and living conditions of all inmates at GSP. (Id. at 3.) Defendant Edwards is Deputy Warden of Care and Treatment at GSP and responsible for overseeing the daily operation of the medical, mental health, education, and counseling services. (Id.) Defendant Ward is Commissioner and has final authority over the management of all prisons in the GDOC, including GSP. (Id.) He also oversees the GDOC's four divisions: facilities, administration & finance, health services, and inmate services.

4

(Id.) Defendant Holt is the Assistant Commissioner in charge of the GDOC's facilities division, responsible for the direct supervision of all persons incarcerated by the GDOC. (Id.) He manages the facilities under authority delegated by Defendant Ward. (Id.) Defendant Toole is the director of the GDOC's field operations division and responsible for overseeing daily operations of the GDOC facilities. (Id.) He operates under authority delegated to him by Defendants Ward and Holt. (Id.) Defendant Shepard is the Southeast Regional Director for the GDOC and is responsible for overseeing management of the 14 facilities throughout southeast Georgia, including GSP. (Id. at 4.) He manages the prisons under authority delegated to him by Defendants Ward, Holt, and Toole. (Id.) Finally, Defendant Sauls is the Assistant Commissioner in charge of the GDOC's services division and is responsible for overseeing the delivery of health care services to all inmates. (Id.)

## II. LEGAL STANDARDS

The Moving Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 8, 10, and 12(b)(6). (Doc. 41, at 1.)

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by*

Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

Plaintiff brings four claims in his Amended Complaint against various Defendants. (Am. Compl., at 14-17.) The Moving Defendants move to dismiss Counts II-IV, the only claims asserted against them. (Doc. 41.) Count II is against Defendants Bobbitt, Edwards, Ward, and Sauls and asserts supervisory liability for deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments and § 1983.[1] (Am. Compl., at 15-16.) Specifically, the Amended Complaint alleges these Defendants had supervisory authority over Defendant Occhipinti and were aware of the substantial risk he would pose to prisoners due to numerous credible concerns of other inmates being denied emergency medical care by medical staff at GSP. (Id.) Count III is against Defendants Bobbitt, Wicker, Ward, Holt, Toole, and Shepard and asserts the same claim as Count II. (Id. at 16.) However, this Count alleges these Defendants had supervisory authority over Defendant Jackson and had a federal and constitutional duty to take reasonable steps to prevent Defendant Jackson from leaving Plaintiff to die in solitary confinement. (Id.) Count IV is against Defendants Bobbitt, Wicker, Ward, Holt, Toole, and Shepard

---

[1] The Court notes that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred . . . ." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). An incarcerated plaintiff can use § 1983 to challenge a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment, which was made applicable to the States by the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976) (citation omitted).

and alleges deliberate indifference toward a substantial risk of harm in violation of the Eighth and Fourteenth Amendments and § 1983. (Id. at 16-17.) Specifically, Plaintiff alleges these Defendants were responsible for the security of the prison and safety of inmates held there and knew about the serious risk to Plaintiff's health and safety posed by the presence of weapons, lack of secure door locks, and lack of security staff due to numerous sources before the present attack. (Id. at 17.)

The Moving Defendants move to dismiss all three counts against them. (See Docs. 41, 41-1.) Plaintiff responded in opposition. (Doc. 42.) The Court addresses their arguments below.

**A. Shotgun Pleading**

First, the Moving Defendants argue the Amended Complaint is an impermissible shotgun pleading. (Doc. 41-1, at 1-3.) They argue the "counts themselves are little more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, which do not suffice.'" (Id. at 2 (quoting Iqbal, 556 U.S. at 679).) In response, Plaintiff argues he properly identified which Defendants are sued for which counts and provided a straightforward basis on which each claim is grounds for the relief sought. (Doc. 42, at 4.)

The Eleventh Circuit has identified four types of shotgun pleadings, but a pleading must only qualify as one of the four to be considered a shotgun pleading. The first type is one

8

"containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321 (11th Cir. 2015). The second type is a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Id. at 1322. The third type is one that does not separate each cause of action or claim for relief into a separate count. Id. at 1323. And fourth is a pleading "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id. The intention of avoiding shotgun pleadings is to ensure defendants have short and plain statements that provide adequate notice of the claims brought against them. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (citing FED. R. CIV. P. 8(a)(2)). Further, it avoids an "intolerable toll" on both the court's docket and the parties involved. See Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997).

In this instance, while the Court shares the Moving Defendants' concerns about Plaintiff grouping all Defendants together in its factual allegations, the Court does not find the Amended Complaint qualifies as a shotgun pleading. The Court

9

therefore turns to the Moving Defendants' other arguments for dismissal.

**B. Failure to State a Claim**

The Moving Defendants next argue Plaintiff fails to state a claim against them because each was sued because of his or her supervisory authority over the conditions that led to Plaintiff's injuries, and Plaintiff has not met the burden of alleging supervisor liability. (Doc. 41-1, at 3.) Specifically, they argue there are no allegations any of the Moving Defendants personally participated in the alleged bad acts, and there is no suggestion of a custom or policy, directing a subordinate to act unlawfully, or failing to stop a subordinate from acting unlawfully. (Id. at 4.)

Typically, "supervisory officials are not [] liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted); accord Stallworth v. Wilkins, 802 F. App'x 435 (11th Cir. 2020). To impose supervisory liability for § 1983 violations, a plaintiff must allege either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352,

1360 (11th Cir. 2003), *abrogated in part on other grounds by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

Plaintiff does not allege the Moving Defendants personally participated in the alleged events, so the Court must determine whether there is a causal connection between the actions of the Moving Defendants and Plaintiff's alleged constitutional deprivations. To establish a causal connection, Plaintiff must allege either: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotation marks omitted) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326

11

F.3d at 1360-61 (quoting Gonzalez, 325 F.3d at 1234) (alterations in original).

The Moving Defendants argue there is no suggestion of a custom or policy, directing a subordinate to act unlawfully, or failing to stop a subordinate from acting unlawfully. (Doc. 41-1, at 4.) Furthermore, they argue Plaintiff "attempts to allege a history of widespread abuse but many of the averments are too conclusory to state a claim." (Id. at 4 (citations omitted).) They assert the actual facts in the Amended Complaint do not amount to widespread abuse necessary to establish a "history of widespread abuse." (Id.) In response, Plaintiff argues at this stage of litigation he only must put the Defendants on fair notice of what his claims are and the grounds for the claims; therefore, his Amended Complaint should not be dismissed when there is a reasonable expectation discovery could supply additional proof of liability. (Doc. 42, at 6-7.) He argues his Amended Complaint cites "the widespread presence of knives and other weapons inside [GSP], lack of functioning security measures, insufficient staff to prevent violent attacks using these weapons, disregard of serious medical issues, understaffing of solitary confinement cells, and abandonments of individuals [] with serious conditions to the point of death in solitary confinement" to illustrate a widespread history of abuse. (Id. at 7-8.) Further, he argues "prior litigation, media reports, audits carried out by various state

entities of [GSP], an investigation by the federal Department of Justice, and research reports from advocacy organizations" establish notice for Defendants, as well as documents not available to him but held by Defendants regarding inmate grievances, situation reports, institutional offender files, and informal reports from officers. (Id. at 8.) Plaintiff argues these allegations at minimum establish the plausibility of widespread abuse and are sufficient under Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012). (Id.)

Preliminarily, "stating a claim does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Tolbert v. Trammell, No. 2:13-cv-2108, 2014 WL 3892115, at *9 (N.D. Ala. Aug. 4, 2012) (quoting Iqbal, 556 U.S. at 679) (internal quotation marks omitted). "Pleadings that fail to state a claim are not entitled to discovery to improve their factual foundation." Id. Based on this, Plaintiff's argument that he has done enough because he has put Defendants on notice and there is a reasonable expectation discovery could supply additional proof of liability is without merit.

The Court now turns to whether Plaintiff sufficiently pled supervisory liability. Plaintiff argues there was a history of widespread abuse that should have put the supervisors on notice of the need to correct the alleged constitutional deprivation, and they failed to do so. (Doc. 42, at 8.) The Amended Complaint

13

states the Defendants exhibit a pattern of disregarding inmate health and safety and cites to the presence of knives and weapons at GSP, numerous attacks and killings within the GDOC and at GSP, insufficient restriction on the movement of inmates, and understaffing. (Am. Compl., at 8-12.) The Moving Defendants argue Plaintiffs' allegations are too conclusory to state a claim. (Doc. 41-1, at 4.) After analyzing the Amended Complaint, the Court agrees with the Moving Defendants.

First, Plaintiff cites to numerous attacks and killings at GSP and within the GDOC and uses statistics from 2020 and 2021. (Am. Compl., at 8-9.) However, as the Moving Defendants argue, the incidents took place after Plaintiff's attack in January 2020 so could not have put the Moving Defendants on notice of widespread abuse. (See Doc. 41-1, at 4.) Next, Plaintiff alleges access to weapons and cites statistics from various sources about the presence of weapons at GSP and within the GDOC. (Am. Compl., at 9-10.) First, he cites to a 2014 report from the Southern Center for Human Rights that states from 2010-2014, 33 prisoners and one officer were killed by other prisoners and contributed the killings to lethal weapons such as knives, shanks, and machetes. (Id. (citing Doc. 37-1, at 26.)) However, these numbers were collected almost 10 years before Plaintiff's incident, so it is conclusory to assume they could have put the Moving Defendants on notice of widespread abuse when so many years have passed since the

14

statistics were collected.  Next, Plaintiff cites to 2018 and 2019 GSP Annual Reports that found tools from the kitchen, maintenance, and other areas of the prison were not checked daily or properly inventoried.  (Id. at 10.)  However, Plaintiff does not allege he was injured by an unaccounted tool, so these studies are irrelevant to the facts of the case.  Plaintiff also cites to studies dealing with contraband mailed to GDOC facilities, but again some were published after his incident and there are no allegations linking the knife in this case to anything mailed into the prison, so this could not have put the Moving Defendants on notice of this type of widespread abuse either.  As the Moving Defendants correctly argue, the facts Plaintiff alleges do not amount to *causation* of Plaintiff's injuries.  (See Doc. 41-1, at 5.)

Next, Plaintiff alleges insufficient restriction on inmate movement and understaffing lead to widespread threats to inmate safety.  (Am. Compl., at 11-12.)  He states the 2019 GSP Annual Report showed that when offenders were moved to dorms, the officers did not receive locator cards.  (Id. at 11.)  However, there is no connection on how this could have put the Moving Defendants on notice of the events that transpired here.  Plaintiff also cites to a 2021 report, after his incident, in which inmates were interviewed and admitted they knew how to unlock cell doors.  (Id.)  Once again, the Court does not believe the allegations regarding inmate movement rise to the "extremely rigorous" standard of

15

supervisory liability sufficient to put the Moving Defendants on notice of widespread abuse. See Gibbons v. McBride, 124 F. Supp. 3d 1342, 1364-65 (S.D. Ga. 2015) ("In short, the standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." (citation and quotations omitted)). Plaintiff also alleges understaffing was prevalent at GSP, and the Defendants were aware of the threat to inmate safety due to chronic understaffing. (Am. Compl., at 12.) However, there are no allegations understaffing caused Plaintiff's assault; he simply alleges a lack of security staffing posed a serious risk at GSP. (See id. at 17.) Therefore, these allegations are also insufficient to illustrate the Moving Defendants were on notice of widespread abuse and a risk of harm to Plaintiff.

Finally, Plaintiff cites to prior and ongoing litigation, arguing these cases put the Defendants on notice of the need to correct the alleged constitutional deprivations. (Id. at 13-14.) The Moving Defendants argue prior litigation has not put them on notice of dangerous conditions or a pattern of denying medical care for serious medical needs. (Doc. 41-1, at 5.) In response, Plaintiff argues even a handful of medical indifference cases, in their totality, constitute a widespread problem alone. (Doc. 42, at 8.) The Court disagrees with Plaintiff's argument, especially in light of the fact "[t]he law does not impose upon correctional

16

officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." Cameron v. Allen, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007). Based on this, Plaintiff's cited lawsuits are insufficient to establish supervisor liability as to the Moving Defendants. Next, the Moving Defendants argue that just because five inmates in 2015 and 2016 made allegations concerning healthcare does not mean any of them had merit, none of these Defendants were parties to those suits, and knowledge of such cannot be imputed to them. (Doc. 41-1, at 5-6.) Furthermore, they argue that even if all five cited lawsuits had merit, they do not constitute abuse that is obvious, flagrant, rampant, and of continued duration, but instead, isolated occurrences. (Id. at 6 (citing Hartley, 193 F.3d at 1269).) Finally, the Moving Defendants argue the Middleton lawsuit referenced by Plaintiff contains overlap in the Defendants; however, it was filed in 2021 and the incidents occurred after Plaintiff was attacked, so it again does not illustrate a history of widespread abuse. (Id.) In response, Plaintiff argues that even if some of the incidents or indicators of misconduct occurred after his own assault, they still illustrate that the problems had been ongoing for years and his complaint contains allegations that the patterns of misconduct stretch back to before his assault.

17

(Doc. 42, at 9.) Plaintiff argues there is no need for the cited litigation to be successful because "where the litigation asserts the plausibility of widespread abuse in the form of generalized risks, the underlying alleged abuses are enough to establish notice regardless of which officials were sued." (Id. at 10.)

The Court finds that Plaintiff's Amended Complaint does not sufficiently plead allegations of abuse that are so "obvious, flagrant, rampant, and of continued duration" to put the Moving Defendants on notice of widespread abuse. See Hartley, 193 F.3d at 1269 (citation omitted). While Plaintiff pleads many isolated occurrences from before and after his own attack, the allegations do not meet the "extremely rigorous" standard required to hold supervisors liable for the acts of their subordinates. See Gibbons, 124 F. Supp. 3d at 1364-65. The isolated incidents and statistics Plaintiff outlines in his Amended Complaint were insufficient to put the Moving Defendants on notice of what might happen to Plaintiff during the alleged incident. Without a causal connection to link the Moving Defendants to the alleged unconstitutional acts, there is no basis for supervisor liability. The Court therefore **DISMISSES** all claims against the Moving Defendants.

## C. Qualified Immunity

Finally, the Moving Defendants assert they are entitled to qualified immunity as to Plaintiff's claims. (Doc. 41-1, at 7.)

Since the Court has found Plaintiff's claims fail because he did not sufficiently allege supervisory liability, the Court will not address the Moving Defendants' qualified immunity arguments.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants Bobbitt, Wicker, Edwards, Ward, Holt, Toole, Shepard, and Sauls' motion to dismiss (Doc. 41) is **GRANTED** and Counts II-IV of Plaintiff's Amended Complaint are **DISMISSED**. The **CLERK** is **DIRECTED** to terminate Defendants Bobbitt, Wicker, Edwards, Ward, Holt, Toole, Shepard, and Sauls as parties to this action. Count I remains pending.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of February, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA